RANGER v. NEW ORLEANS. See Case No. 15,871.

## Case No. 11,565.

### The RANIER.

[Deady, 438.] [1]

District Court, D. Oregon. Aug. 1, 1868.

PENAL ACTION—STEAMBOAT ACTS—LIEN—FORFEITURE.

Section 2 of the act of 1838 (5 Stat. 304), and section 1 of the act of 1852 (10 Stat. 61), which give penalty against a steamboat navigating the waters of the United States in violation of those acts, do not forfeit any interest in said boats for such violations, but only give the United States a right to collect such penalty by a proceeding in rem against the offending boat; and, until a seizure in such proceeding, the United States has no lien upon or interest in such boat, by reason of such violation.

[Cited in The Kate Heron, Case No. 7,619.]

On May 2, 1868, the United States commenced suit against the steamboat Ranier,

---

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

for sixteen penalties, amounting in the aggregate to $8,000, for violations of section 2 of the act of July 7, 1838 (5 Stat. 304), and section 1 of the act of August 30, 1852 (10 Stat. 61), commonly called the "Steamboat Acts." The boat was taken into custody by the marshal, under process issued in the suit. The Cowlitz Navigation Co. afterwards made claim to her as owners, and confessing the libel applied for a remission of the penalties. On July 25, in pursuance of an order of this court, made on the petition of the claimants, the Rainier was sold for the sum of $4,500. On July 11, an interlocutory decree was given in the suit, whereby the United States was adjudged to have a lien upon the boat for the sum of the penalties sued for and incurred as aforesaid; and, also, that sundry seamen and material men, before then duly intervening for their interests in said boat, have a lien upon the same, for the several sums due them, which sums were by said decree found and adjudged to amount in the aggregate to the sum of $3,025.19.

Joseph N. Dolph, for libellant.

W. W. Page, for claimant.

W. W. Thayer, E. W. Hodgkinson, and David Logan, for intervenors.

DEADY, District Judge. The question now arises in this case, which has the prior lien upon the funds in court, the United States or the intervenors? The proceeds of the sale not being sufficient to satisfy the claims of both parties, if the United States has the prior lien, nothing will be left for the intervenors, unless the secretary of the treasury should remit the claim of the former. The liens of the seamen and material men are given by the local law (Code Or. 768). They attach from the time of performing the labor or furnishing the materials. This is admitted by counsel for the United States, but he also maintains that the lien of the United States for each of these penalties, attached at the time of the violation of the act by which it was incurred, and that this being so, the lien for some of the penalties is prior to the liens of some of the intervenors. Section 2 of the act of 1838, after prohibiting steamboats from navigating the waters of the United States without license, "and without having complied with the conditions imposed by that act," provides: "And for each and every violation of this section, the owner or owners of said vessel shall forfeit and pay to the United States the sum of $500, one half for the use of the informer, and for which sum or sums the steamboat or vessel so engaged shall be liable, and may be seized and proceeded against summarily by way of libel in any district court of the United States, having jurisdiction of the offence." Section 1 of the act of 1852, after prohibiting the licensing of vessels, propelled in whole or in part by steam, and carrying passengers, when not equipped as required by that act, provides: "And if any such vessel shall be navigated with passengers on board, without complying with the terms of this act, the owner thereof and the vessel itself shall be subject to the penalties contained in the second section of the act to which this is an amendment."

The argument for the United States assumes that the incurring of each of these penalties, worked pro tanto a forfeiture of the boat. Now, the act of 1838 does not in terms forfeit any part of the boat, but the penalty given thereby of $500, is declared to be forfeited by the owners thereof. The legal effect of this enactment is not to forfeit any specific thing or interest therein, but to give the United States a right of action against the owners of an offending boat for that amount of money, to be made out of their general property, according to the ordinary course of judicial proceedings, and, also, specially out of such boat by a proceeding in rem. The act of 1852 is somewhat different in language, but in my judgment the legal effect is the same. When it declares that the owner and vessel "shall be subject to the penalties contained" in the act of 1832, it in effect provides that they shall be liable thereto, and in the manner provided in said act of 1838. Both the owner and boat are liable for the penalty, from the time of the commission of the offence, but no right or interest in such boat or any other property of the owners is thereby transferred to the United States, nor until it commences proceedings to enforce the claim of such penalty and seizes or attaches such boat or other property by due process of law to satisfy the same. On the other hand, if the two acts taken together declare a forfeiture by the owners of a penalty of $500, generally, or a special interest of that value in the offending boat, then the forfeiture is given in the alternative, and neither takes effect, until the government makes its election, by the commencement of proper proceedings, which to recover. Caldwell v. U. S., 8 How. [49 U. S.] 379. Upon this theory of the law, the United States would not acquire any interest in the boat until it elected to proceed against it, rather than the owners thereof, and the boat had been taken on process in such proceeding. But the liens of the intervenors had attached before this election was made, by the commencement of this suit. But if the forfeiture of the boat or an interest therein was absolute, and transferred the property therein from the time of the violation of the act to the United States, still it seems that it would be subject to the claims of the seaman and material men. The United States would take it as a purchaser—cum onere.

In U. S. v. Wilder [Case No. 16,694], Mr. Justice Story, in considering a similar question, by way of illustration, says: "Besides, it is by no means true, that liens existing on

particular things, are displaced by the government becoming or succeeding to the proprietary interest. The lien of seaman's wages and of bottomry bonds exist in all cases as much against the government becoming proprietors by way of purchase, or forfeiture, or otherwise, as it does against the particular things in the possession of a private person." In The Florenzo [Case No. 4,886], there was a decree, condemning the vessel as forfeited to the United States, subject to the claims of the seamen and material men, who were to be first paid out of the proceeds of the vessel. No question was made upon this point in the argument, and the decree preferring the seamen and material men seem to have passed as a matter of course. The libel of the seaman was filed before that of the United States, but from the statement of the case, it is probable that the act causing the forfeiture occurred before the lien of the former occurred. See, also, Cutter v. Rae, 7 How. [48 U. S.] 731. Still, these authorities do not explicitly decide that seaman's wages earned after a forfeiture of a vessel to the United States, are a lien upon the same as against the United States. In the case at bar, most of the claims for materials accrued before the boat commenced to run in violation of the act, but the wages of the seamen and the violations of the act were earned and happened during the same period. But I am not satisfied that either the act of 1838 or 1852, or both taken together, forfeit any interest in the boat, either absolutely or in the alternative. In my judgment, the only forfeiture given by sections 1 and 2 of these acts is the penalty of $500. As has been shown, this in legal effect is nothing more than a right of action against the owners to recover such penalty as a debt due from them to the government. In addition to this, and to facilitate the collection of this debt, the offending boat is made liable in rem. This provision may be likened to the right of attachment on mesne process in a common law action. In certain cases, the general property of a debtor is made liable to such attachment as a security for the satisfaction of the plaintiff's demand. But until the property is attached, no lien arises in favor of the plaintiff in the writ. So here, the boat is liable to be seized and proceeded against in rem. as a means of enforcing the collection of the debt due from the owners--the penalty forfeited by them, and the lien of the United States attaches upon the seizure of the boat, and is therefore subordinate to the prior liens of the intervenors.

The decree of the court is, that the claims of the intervenors for wages and materials, as found and determined by the interlocutory decree of July 11, be first paid out of the fund in court, and that the sum thereby found due the United States, remain unpaid until the application of the claimants for remission of the penalties is heard from, or the further order of this court.